UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA SPATIG,                    )
                                  )    No. CV-11-05044-CI
        Plaintiff,                )
                                  )    ORDER GRANTING DEFENDANT'S
v.                                )    MOTION FOR SUMMARY JUDGMENT
                                  )
MICHAEL J. ASTRUE, Commissioner   )
of Social Security,               )
                                  )
        Defendant.                )
                                  )
_____ )

    BEFORE THE COURT are cross-Motions for Summary Judgment. ECF
No. 19, 21.   Attorney D. James Tree represents Sandra Spatig
(Plaintiff); Special Assistant United States Attorney Richard M.
Rodriguez represents the Commissioner of Social Security
(Defendant).   The parties have consented to proceed before a
magistrate judge. ECF No. 7.   After reviewing the administrative
record and briefs filed by the parties, the court **GRANTS** Defendant's
Motion for Summary Judgment and **DENIES** Plaintiff's Motion for
Summary Judgment.

                        **JURISDICTION**

    On March 13, 2006, Plaintiff protectively filed an application
for supplemental security income, alleging disability beginning
January 1, 1998.  Tr. 39; 121.   In her application for benefits,
Plaintiff reported that she stopped working due to "heart,
depression, anxiety, panic attacks, pain through whole body." Tr.
167.  Plaintiff's claim was denied initially and on reconsideration,
and she requested a hearing before an administrative law judge
(ALJ).  Tr. 82-108.  A hearing was held on January 28, 2009, at
which Vocational Expert Richard Kyo, and Plaintiff, who was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

represented by counsel, testified.  Tr. 52-79.  ALJ Richard Say presided.  Tr. 52.  The ALJ denied benefits on July 29, 2009.  Tr. 39-48.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 39 years old, separated, and she lived in a cabin on family property with her 17 year-old daughter.  Tr. 56-57.  She has an eighth-grade education.  Tr. 57.

Plaintiff has worked as a clerk at thrift stores.  Tr. 58.  She testified that in January 1998, she awakened with a "sciatic nerve problem" and her condition has progressively worsened.  Tr. 58.  Plaintiff also testified that on most days, her daughter helps her bathe and dress because using her left shoulder is extremely painful.  Tr. 60.  Plaintiff said her daughter does the cooking and the dishes, and Plaintiff cannot "do much of anything because of the pain – the burning is unbelievable it's just too much for me to do anything."  Tr. 61.  Plaintiff said the pain is throughout her back, but the worst pain is in her lower back.  Tr. 62.

Plaintiff tries to shop, but on some days she experiences panic attacks and feels like she is going to suffer a heart attack at the check-out stand.  Tr. 62.  On a typical day she watches television, reads books, magazines, and goes outside with her dogs.  Tr. 63.

Plaintiff testified that she can stand 15 to 30 minutes and sit for about 20 to 30 minutes at a time.  Tr. 64.  She estimates she can walk about one block before she needs to rest.  Tr. 64.  She

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

said she has bone spurs on each side of her left knee, and on occasion, her knee gives out unexpectedly and she falls.  Tr. 67.

Plaintiff testified that as a young child, she was regularly sexually assaulted by a friend of her father's, who was a police officer.  The assaults took place at bedtime, and she fears going to sleep, has nightmares, and does not sleep well.  Tr. 65-66.

### ADMINISTRATIVE DECISION

At step one, ALJ Say found Plaintiff had not engaged in substantial gainful activity since March 13, 2006, the onset date. Tr. 41.  At step two, he found Plaintiff had the following severe impairments: obesity, chronic pain, left shoulder impingement syndrome, depression and anxiety.  Tr. 41.  At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  Tr. 41.  In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. Tr. 43.  The ALJ found that Plaintiff was unable to perform any past relevant work.  Tr. 46.  Finally, the ALJ found considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform, such as hand packager, extruder machine operator, and microfilm document preparer/scanner.  Tr. 47.

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff alleges that the ALJ erred by (1) rejecting Plaintiff's Post Traumatic Stress Disorder ("PTSD") as groundless at step two; (2) rejecting Plaintiff's treating medical providers; and (3) failing to meet the step five burden by relying upon an incomplete hypothetical.

**DISCUSSION**

**A.   Step Two:  Post Traumatic Stress Disorder**

Plaintiff contends that the ALJ erred by failing to include

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

PTSD as a severe impairment at step two. ECF No. 20 at 13. Plaintiff contends that her medical providers found that PTSD severely limited her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. ECF No. 20 at 13-14. The Defendant argues that the failure to designate PTSD as a severe impairment was harmless, because the ALJ incorporated the limitations that arose from the PTSD into the RFC determination. ECF No. 22 at 19. At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920(c). At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. See *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social

Security regulations.  See, *e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

In determining whether a claimant's impairments are severe at step two, the ALJ evaluates medical evidence and explains the weight given to the opinions of acceptable medical sources in the record. SSR 85-28.  Failure to list an impairment as severe at step two is deemed harmless where the ALJ considered the functional limitations posed by that impairment later in the decision.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In February 2009, Kimberly Humann, M.D., approved a Mental Residual Functional Capacity Assessment of Plaintiff completed by Steven Woolpert, M.S., M.H.P.  Tr. 469-71.  The assessment indicated Plaintiff had several marked limitations and one severe limitation. Tr. 469-71.  Plaintiff's severe limitation involved the ability to complete a normal workday and week without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 470. Plaintiff's marked limitations included the abilities to understand, remember and carry out detailed instructions, work with others, get along with coworkers and travel to unfamiliar places or use public transportation.  Tr. 469-71.  Mr. Woolpert also stated: "Patient suffers from chronic PTSD and has frequent triggers in situations in which she has to deal with unfamiliar people which would seriously limit her ability to work."  Tr. 471.

The ALJ found that Dr. Humann's assessment should be afforded little weight because later testing revealed evidence that Plaintiff

exaggerated her symptoms.  Tr. 45.  Where a medical source opinion is based primarily on a claimant's self-reported symptoms, credibility is an appropriate factor to consider in the evaluation of medical evidence at step two.  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  Nevertheless, the ALJ incorporated several of Plaintiff's limitations, as expressed by Dr. Humann and Mr. Woolpert, into Plaintiff's RFC.  For example, Plaintiff's RFC limited her to short, simple instructions, with no interaction with the public, and with only superficial interaction with co-workers. Tr. 42.

Moreover, Plaintiff failed to provide medical evidence consisting of signs, symptoms, and laboratory findings to establish her claim of PTSD.  In light of later testing that revealed Plaintiff exaggerated her symptoms, the ALJ's determination that PTSD did not constitute a severe impairment was not error.

**B.   Medical Opinions**

The Plaintiff contends that the ALJ improperly rejected the opinions from her treating and examining medical providers.  ECF No. 20 at 14.  Plaintiff contends that the ALJ failed to adequately consider the opinions of Drs. Ingram, Humann, and Tupper, Mr. Woolpert, Mr. Pomerinke, Ms. Raynor and Ms. Nevara.  ECF No. 20 at 15-18.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the

claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id*. Where a treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; see also *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id*. at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (2002). Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue,* 495 F.3d 625, 631 (9ᵗʰ Cir. 2007). Where conflict exists between the opinion of a treating physician and an examining physician, the ALJ may not reject the

1  opinion of the treating physician without setting forth specific,
2  legitimate reasons supported by substantial evidence in the record.
3  *Id.* at 632.

4      **1.    Mental Impairment Opinions**

5      Plaintiff alleges that the ALJ failed to adequately consider
6  the opinions of Ms. Raynor, Mr. Pomerinke and Dr. Humann.  ECF No.
7  20 at 15.  Specifically, Plaintiff alleges that the ALJ erred by
8  failing to explain the weight allocated to Ms. Raynor's opinion.
9  Defendant responds that because Ms. Raynor's opinion was identical
10 to Dr. Humann's opinion, the court "can so infer that the ALJ
11 considered the identical opinions by Ms. Raynor and Dr. Humann
12 together."  ECF No. 22 at 16.

13     Michelle Raynor, M.S.W., an "intake specialist" at Central
14 Washington Comprehensive Mental Health, examined Plaintiff on
15 February 8, 2008, and diagnosed Plaintiff with Major Depressive
16 Disorder, Recurrent, and Posttraumatic Stress Disorder.  Tr. 393;
17 397; 399.  On September 3, 2008, Kimberly Humann, M.D., examined
18 Plaintiff primarily for the purpose of medication management.  Tr.
19 458-59.  Dr. Humann diagnosed Plaintiff with Major Depressive
20 Disorder, Recurrent, and Posttraumatic Stress Disorder.  Tr. 459.
21 Dr. Humann noted that Plaintiff had increased the dose of her anti-
22 depressant medication, and the higher dose was helping.  Tr. 459.

23     Under these circumstances, the ALJ's failure to specifically
24 address Ms. Raynor's opinion was not error.  While, as Plaintiff
25 points out, Ms. Raynor and Dr. Humann's medical records are not
26 identical, they are materially similar in that both provide
27 identical diagnoses.  Tr. 397; 459.  The ALJ need not discuss all

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

evidence presented, but instead must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).   In this case, the evidence which the ALJ did not specifically address was neither significant nor probative. Ms. Raynor's diagnosis was identical to Dr. Humann's diagnosis, and Ms. Raynor's intake form does not provide additional probative information.  As a result, the ALJ's failure to specifically analyze Ms. Raynor's opinion was not error.

Plaintiff also contends that the ALJ failed to give adequate reasons for rejecting the opinions from Dr. Humann and Mr. Pomerinke.  ECF No. 20 at 17.  The ALJ noted the opinion of Mr. Pomerinke "is based entirely upon Plaintiff's self-report of symptoms that are not fully credible.  He is not an acceptable medical source and his opinion is given little weight."  Tr. 45. Plaintiff asserted that because Mr. Pomerinke's opinion "coincide[d]" with Mr. Woolpert and Dr. Humann's MRFC opinion, the ALJ's reasoning for rejecting Mr. Pomerinke's opinion was insufficient.  Plaintiff does not provide briefing or meaningful analysis to support this argument.  The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Moreover, an ALJ may reject a treating physician's opinion if it is largely based on a claimant's self-reports that were properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In this case, because Mr. Pomerinke's report was

1   based on Plaintiff's self-reports that were properly deemed not
2   fully credible, the ALJ's reasoning for rejecting the report was
3   proper.

4       Plaintiff also contends that Dr. Humann and Mr. Woolpert's
5   respective opinions were improperly rejected based upon the post-
6   hearing evaluation.   ECF No. 20 at 17.   Plaintiff argues that the
7   treating physicians were in a better position to assess credibility,
8   and the treating opinions that did not indicate malingering.   ECF
9   No. 20 at 17.   Plaintiff also argues that the post-hearing examiners
10  were biased.   ECF No. 20 at 17-18.

11      The opinion of an examining physician may be considered
12  substantial evidence when the opinion is consistent with independent
13  clinical findings.   See *Thomas*, 278 F.3d at 957.   In this case, both
14  post-hearing examiners administered objective tests and both sets of
15  tests suggested malingering.   In March 2009, Elaine Greif, Ph.D.,
16  reported that she was unable to provide a diagnosis without
17  independent sources of information due to Plaintiff's exaggeration
18  in MMPI results and in reporting: "There are indications of
19  exaggeration of pathology in Ms. Spatig's reports and on MMPI and
20  her presentation reflects little congruent emotionality or manifest
21  distress."   Tr. 478.   In May 2009, Jay Toews, Ph.D., also examined
22  Plaintiff and his report indicates that Plaintiff's MMPI-2 score was
23  not interpretable "due to over endorsement of pathological items.
24  The Validity Profile is consistent with malingering."   Tr. 490.   Dr.
25  Toews concluded that "it is highly likely that many of [Plaintiff's]
26  complaints and problems may be due to disability seeking
27  motivation."   Tr. 491.   Both post-hearing evaluators concluded
28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Plaintiff was malingering, and based their respective conclusions upon independent, objective test results. As a result, the ALJ properly relied upon the post-hearing evaluations as substantial evidence.

Plaintiff also complained that the examiners were biased, but provides no evidence to support the allegation. ECF No. 20 at 17-18. At the close of the hearing, Plaintiff's attorney informed the court that Plaintiff had not undergone an independent comprehensive mental exam, and he recommended Plaintiff be examined.[1] As a result, Plaintiff was examined by both Dr. Greif and Dr. Toews. The ALJ has a duty to develop the record in Social Security cases. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). In cases of mental impairments, this duty is deemed especially important: "Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment." SSR 83-20. In this case, the ALJ properly developed the record by ordering additional mental examinations for Plaintiff, and relied upon the results of those examinations in developing Plaintiff's RFC.

---

[1] "And then also the DSHS psychiatric evaluation that I referred to in my hypothetical, you know indicates some pretty severe limitations and I don't think she's been sent out yet for a CE by the administration and I do think that would be appropriate." Tr. 77.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

**2.    Physical Impairment Opinions**

Plaintiff contends that the ALJ erred by failing to adequately consider the opinions about Plaintiff's physical limitations from Drs. Ingram and Tupper, and Ms. Nevara.   ECF No. 20 at 15. Plaintiff alleges that the ALJ incorrectly discounted the opinion of Dr. Tupper[2] on the basis that the evidence did not support a diagnosis of ankylosing spondylitis.   ECF No. 20 at 15.   The ALJ found that the opinion of Dr. Tupper was not supported by the treatment record and was given little weight.   Tr. 44.   In support of his conclusion, the ALJ cited September 2006 x-rays that did not establish the diagnosis.   Tr. 44.

In medical records between April and September 2006, E.G. Tupper, M.D., listed Plaintiff's diagnosis as ankylosing spondylitis.   Tr. 284-86.   On September 11, 2006, a thoracic spine series x-rays was interpreted by Rodney Raabe, M.D., as revealing "multilevel degenerative disc space narrowing with slight hypertrophic end plate changes.   No evidence for syndesmophytes, which are typical of ankylosing spondylitis." Tr. 287.   The lumbar spine series revealed a similar condition of mild degenerative changes of the lumbar spine, and "no evidence of ankylosing spondylitis."   Tr. 288.   Moreover, as the ALJ found, Plaintiff's reliance upon the December 2008, x-ray interpreted by David Thorne, M.D., is misplaced.   Dr. Thorne's x-ray indicates the presence of

---

[2]The opinion references Elsie G. Tucker, M.D.   Tr. 44.   It appears this is a typographical error, as the referenced pages reveal the physician's proper name is Elsie G. Tupper, M.D.   Tr. 287.

"degenerative spondylosis," not ankylosing spondylitis.  Tr. 448.
Thus, the ALJ's conclusion that Dr. Tupper's diagnosis deserved
little weight is supported by the record.

Additionally, Plaintiff complains the ALJ erred in
consideration of Nurse Nevara's assessment.  The ALJ cited the
opinion from L. Nevara, FNP, a treating nurse practitioner, and
indicated that her opinion was consistent with the record and was
given great weight.  Tr. 44.  The ALJ noted that Nurse Nevara opined
Plaintiff's complaints far outweighed the objective medical
findings, regular work might benefit Plaintiff's impairments, and
Plaintiff is capable of sedentary work.  Tr. 44.

Plaintiff complains that the ALJ erred by focusing on the
single opinion that Plaintiff's subjective complaints outweighed the
objective findings.  ECF No. 20 at 15.  Plaintiff also argues that
a significant record - the 2008 x-ray indicating degenerative
spondylosis - was not in Ms. Nevara's possession when she formed
her opinion about Plaintiff's subjective complaints.[3]  ECF No. 20 at
15.  While it is unclear if Nurse Nevara considered the December
2008 x-ray report prior to her December 9, 2008, Medical Report, the
Nurse specifically referenced the December 2008 x-ray in her

_____

[3]Plaintiff also argues that the ALJ misinterpreted Nurse
Nevara's estimate of the amount of time Plaintiff needs to lie down
per day.  Plaintiff argues the nurse's notation is 2-1/2 hours, and
not the ½ hour the ALJ found.  ECF No. 20 at 16.  However, the
notation in the record appears not as a "2" as supposed by the
Plaintiff, but instead "~", the symbol for about or approximately.
Tr. 384.

December 2008 Physical Evaluation Form.    Tr. 442-43.    One report stated that regular work may benefit Plaintiff over a sedentary lifestyle, and the second report concluded Plaintiff was capable of sedentary work.    Tr. 385, 443.    The ALJ properly weighed and relied upon Nurse Nevara's assessments of Plaintiff.

Finally, Plaintiff complains that the ALJ failed to discuss Dr. Ingram's opinion.    ECF No. 20 at 16.    The ALJ recited several findings from a rheumatology clinic visit with Shirley D. Ingram, M.D.    Tr. 44.    The ALJ did not mention Dr. Ingram's name in that portion of the opinion.    Tr. 44.    Plaintiff noted that Dr. Ingram concluded Plaintiff had diffuse mylagias and arthralgias and her pain was likely the result of fibromyalgia in addition to rotator cuff impingement syndrome.    ECF No. 20 at 16.    Plaintiff alleged Dr. Ingram's diagnosis provide objective evidence supporting Plaintiff's chronic pain in her knee, shoulder and back.    ECF No. 20 at 16. While Plaintiff accurately cites Dr. Ingram's tentative diagnosis, Dr. Ingram also noted that Plaintiff exhibited some symptom exaggeration: "[patient was] able to easily move to exam table, but then dramatic pain behavior upon lying down and exam of lower extremities."    Tr. 297.    Dr. Ingram noted that more test results were necessary to determine if Plaintiff had symptoms of inflammatory arthritis or spondyloarthropathy.    Tr. 297.    The x-ray results for Plaintiff's knee, pelvis and hands revealed no significant findings.    Tr. 298-300.    Contrary to Plaintiff's assertions, neither the medical records nor the assessment from Dr. Ingram provide objective support for Plaintiff's claimed level of impairment.

**C.    Step Five**

Plaintiff contends that the ALJ erred by relying upon the VE's testimony because the ALJ posed an incomplete hypothetical. ECF No. 20 at 18. Specifically, the Plaintiff contends that the hypothetical was deficient because it failed to include the marked limitations noted by Mr. Woolpert and Dr. Humann. ECF No. 20 at 19. A claimant fails to establish that a Step Five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). As previously analyzed, the ALJ properly evaluated the evidence.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.   Accordingly,

**IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment, **ECF No. 21,** is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, **ECF No. 19,** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED.**

DATED January 14, 2013.


                    S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17